# EXHIBIT    A



# State of New Jersey
### DEPARTMENT OF BANKING AND INSURANCE
### OFFICE OF LEGISLATIVE AND REGULATORY AFFAIRS

**Chris Christie**
*Governor*

**Kim Guadagno**
*Lt. Governor*

PO BOX 325
TRENTON, NJ 08625-0325
Tel (609) 984-3602
Fax (609) 292-0896

**Richard J. Badolato**
*Acting Commissioner*

**CERTIFIED MAIL**
**RETURN RECEIPT REQUESTED**

5/10/2016

Attention:
CORPORATION SERVICE COMPANY
LIBERTY MUTUAL FIRE INSURANCE COMPANY
830 BEAR TAVERN ROAD
WEST TRENTON, NJ 08628

RE: Natalie Orban and David Orban v. Liberty Mutual Fire Insurance
Company
Superior Court of NJ, Warren County Law Division
Docket No.: WRN-L-132-16

Dear Sir/Madam:

You are hereby notified that on this date the Commissioner of the New Jersey Department of Banking and Insurance has accepted original service of process on your behalf in the above-captioned matter. The documents served are enclosed herein.

By copy of this letter I am advising the Attorney for the Plaintiff(s) in this matter and certifying with the Clerk of the Court that these documents have been transmitted to you, and confirming that the Commissioner of Banking and Insurance is not authorized to receive service of any further documents in this action.

Very Truly Yours,

Debra A. Mullen
Administrative Assistant

C: Robert B. Woodruff, Esq.
Schiller & Pittenger, PC
1771 Front Street
Scotch Plains, NJ 07076

Clerk of the Superior Court, Warren County



## SUMMONS

| | |
|---|---|
| Attorney(s) Schiller & Pittenger, P.C. | **Superior Court of New Jersey** |
| Office Address 1771 Front Street | |
| Town, State, Zip Code Scotch Plains, NJ 07076 | Warren COUNTY |
| Telephone Number (908) 490-0444 | LAW DIVISION |
| Attorney(s) for Plaintiff Natalie and David Orban | |
| NATALIE ORBAN and DAVID ORBAN, | Docket No: WRN-L-132-16 |
| Plaintiff(s) | |
| Vs. | **CIVIL ACTION SUMMONS** |
| LIBERTY MUTUAL FIRE INSURANCE COMPANY, | |
| Defendant(s) | |

From The State of New Jersey To The Defendant(s) Named Above:

The plaintiff, named above, has filed a lawsuit against you in the Superior Court of New Jersey. The complaint attached to this summons states the basis for this lawsuit. If you dispute this complaint, you or your attorney must file a written answer or motion and proof of service with the deputy clerk of the Superior Court in the county listed above within 35 days from the date you received this summons, not counting the date you received it. (A directory of the addresses of each deputy clerk of the Superior Court is available in the Civil Division Management Office in the county listed above and online at http://www.judiciary.state.nj.us/pro se/10153_deptyclerklawref.pdf.) If the complaint is one in foreclosure, then you must file your written answer or motion and proof of service with the Clerk of the Superior Court, Hughes Justice Complex, P.O. Box 971, Trenton, NJ 08625-0971. A filing fee payable to the Treasurer, State of New Jersey and a completed Case Information Statement (available from the deputy clerk of the Superior Court) must accompany your answer or motion when it is filed. You must also send a copy of your answer or motion to plaintiff's attorney whose name and address appear above, or to plaintiff, if no attorney is named above. A telephone call will not protect your rights; you must file and serve a written answer or motion (with fee of $175.00 and completed Case Information Statement) if you want the court to hear your defense.

If you do not file and serve a written answer or motion within 35 days, the court may enter a judgment against you for the relief plaintiff demands, plus interest and costs of suit. If judgment is entered against you, the Sheriff may seize your money, wages or property to pay all or part of the judgment.

If you cannot afford an attorney, you may call the Legal Services office in the county where you live or the Legal Services of New Jersey Statewide Hotline at 1-888-LSNJ-LAW (1-888-576-5529). If you do not have an attorney and are not eligible for free legal assistance, you may obtain a referral to an attorney by calling one of the Lawyer Referral Services. A directory with contact information for local Legal Services Offices and Lawyer Referral Services is available in the Civil Division Management Office in the county listed above and online at http://www.judiciary.state.nj.us/prose/10153_deptyclerklawref.pdf.

/s/ Michelle M. Smith
Clerk of the Superior Court

DATED: 05/09/2016

Name of Defendant to Be Served: Liberty Mutual Fire Insurance Company

Address of Defendant to Be Served: 175 Berkeley Street, Boston, MA 02116

Revised 11/17/2014, CN 10792-English (Appendix XII-A)

**SCHILLER & PITTENGER, P.C.**
Robert B. Woodruff, Esq. – NJ Attorney ID #017891976
1771 Front Street
Scotch Plains, NJ 07076
Telephone: 908-490-0444
Facsimile: 908-490-0425
Attorneys for Plaintiffs

RECEIVED/FILED
SUPERIOR COURT OF N.J.
WARREN COUNTY

2016 APR 27 P 3: 07

DEPUTY CLERK
CIVIL DIVISION

| | |
|---|---|
| NATALIE ORBAN and DAVID ORBAN, <br><br> Plaintiffs, <br><br> v. <br><br> LIBERTY MUTUAL FIRE INSURANCE COMPANY, <br><br> Defendant. | SUPERIOR COURT OF NEW JERSEY <br> LAW DIVISION: WARREN COUNTY <br> DOCKET NO. <br><br> L-132-16 <br><br> **COMPLAINT** <br> **AND JURY DEMAND** |

Plaintiff, Natalie and David Orban currently residing at 6 Lois Lane, Hampton, New Jersey, by way of Complaint against Defendant say:

1. At all times relevant hereto, Plaintiffs were the owners of a residential property located at 3 Pohat Court, Washington Borough, Warren County, New Jersey. They had resided in this home for approximately eight (8) years with their two children. The home was constructed in 1999/2000.

2. At all times relevant herein, Defendant Liberty Mutual Fire Company (hereafter "Liberty Mutual") was a corporation licensed to do business in the State of New Jersey to provide, *inter alia*, insurance services to members of the general public.

3. At all times relevant hereto, Plaintiffs did possess a Liberty Mutual Fire Insurance Company policy (#32-238-473809-70) (hereafter "the policy"), which insured the 3 Pohat Court

premises. The inception date of the policy was September 21, 2014, with an expiration date of September 21, 2015.

4. The policy provided for the following relevant coverage: (a) Dwelling with Expanded Replacement Cost - $609,600.00; and (b) Personal Property with Replacement Cost - $457,200.00.

5. The policy of insurance in effect on behalf of the Plaintiffs provided by Liberty Mutual included a "Sinkhole Rider," for which Plaintiffs paid an additional premium, wherein Liberty Mutual did promise to insure and indemnify regarding any damages to the Plaintiffs' residence which flowed from the existence of a "sinkhole collapse." More particularly, the policy, which had been amended to include said Rider, provided as follows:

> Sinkhole collapse means actual physical damage arising out of, or caused by, sudden settlement or collapse of the earth supporting such property and only when such settlement or collapse results from subterranean "voids" created by the action of water or limestone or similar rock formations.

6. On or about February 23, 2015, Plaintiffs had advised a representative of Liberty Mutual that a sinkhole in their backyard had caused a break in the waste line leading from the home to the septic tank located in the rear yard of the Pohat property. Plaintiffs had acted in a timely fashion, pursuant to their "duties after loss," in providing prompt notice of the event.

7. Due to the fact that this event caused the backup of sewage into the Orban residence, creating an immediate health hazard to the entire family, the Plaintiffs did secure the services of a plumber to address and fix the immediate concerns. In doing so, Plaintiffs exercised additional policy holder obligations by "protecting the property from further damage… and making reasonable and necessary repairs to the property and keeping an accurate record of repair expenses."

8. In spite of being advised on February 23, 2015, of the extreme concerns of Plaintiffs and being aware that immediate repairs would need to be undertaken, Liberty Mutual's representative did not visit the Orbans' property until February 26, 2015. In the interim, Plaintiff's had secured the services of a plumber who had excavated, found the broken pipe, repaired same, and re-buried the pipe.

9. Plaintiff's provided Liberty Mutual with a document from the plumber which attested to the fact that the damage to the drain line and sewer backup were caused by a "sinkhole collapse." They also provided photographs of the damage.

10. Further, Plaintiffs did retain the services of Ground Penetrating Radar Systems, Inc. (hereafter "GPRS") who did examine the Pohat Court residence and property. They did so by sending radar pulses through the ground which located and measured various anomalies consistent with a void present underneath the surface. Their findings were consistent with the presence of sinkholes in the Plaintiff's backyard and near the area where the pipe damage occurred. This corroborated their plumber's findings. This information was given to Liberty Mutual in support of Plaintiffs' claim for coverage under the policy. Defendant never advised Plaintiff that they disagreed with the findings of GPRS.

11. On or about March 27, 2015, Liberty Mutual issued checks to Plaintiffs in the amounts of $41,297.88 and $1,873.77; and, on or about April 13, 2015, and April 14, 2015, Liberty Mutual issued checks to the Plaintiffs in the amounts of $8,359.75 and $5,022.20, respectively. All of these payments were made without reservation by Liberty Mutual to address the Plaintiffs' claim.

12. At no time prior to the payment of said monies did Liberty Mutual perform any testing or make any efforts to confirm or reject the findings of Plaintiffs' plumber and/or their technical report.

13. Plaintiffs did accept said monies in order to address the damages which the sewage backup had done to their dwelling and the cost of repairing the pipe which had been severed.

14. Accordingly, Plaintiffs adhered to all of their obligations as an insured by providing to Liberty Mutual all requested information and taking all appropriate actions in compliance with their duties as an insured regarding a reported loss.

15. Pursuant to the suggestion of a Liberty Mutual adjuster, Bob Murach, and in consideration of the GPRS findings, Plaintiffs interviewed several engineering firms and hired Frey Engineering, LLC to investigate the possibility of other sinkholes on the property.

16. On or about April 13, 2015, Plaintiffs did report to Defendant that cracks were located on the basement floor and wall. In addition, the wall involved was an adjoining wall to where the February 22, 2015, sinkhole had occurred. Plaintiffs did take photographs of such cracking. It was apparent that a sudden shift of the Orban home had occurred.

17. Thereafter, a study of the home was conducted by Frey, including an independent non-destructive test by Enviroprobe Service Inc. with the electro resistivity method, which concluded, *inter alia*: (a) The presence of Karst limestone with voids (sinkholes) on the property surrounding the house; (b) There were surface expressions of sinkholes visible in at least three locations on the subject property; (c) That the Defendant's own "test pit" investigation conducted on June 10, 2015, at or below the foundation confirmed the dwelling was properly constructed and that the sinkhole likely extended below the foundation and under the house footprint; (d)

That the sinkholes resulted in the development of stress relief cracks in the foundation that were moving upward into the basement masonry brick walls; (e) That said cracks have compromised the integrity and safety of the dwelling to the extent that the structure was no longer suitable for human habitation; (f) Further, the Township Building Official condemned the structure for human habitation; (g) The foundation did not shift as a result of improper construction or hydraulic pressure; (h) That the dwelling had shifted and continued to do so due to the loss of foundation support materials into the openings of subterranean voids and continued to shift to do the ongoing action of groundwater dissolving limestone. Throughout this time, Defendant was advised of each study/finding and invited to send their own representative to examine the home, as well as borehole samples which were obtained during Frey's investigations. They did not do so.

18.  As a result of these dangerous conditions, Plaintiffs' family was forced to leave the home on June 1, 2015.

19.  In early June 2015, Defendant was advised that cracking had been continuing. Further, Township officials had ordered the disconnection of all utilities on June 1, 2015.

20.  Throughout the following months, Plaintiffs took all necessary steps to follow their contractual obligations adherent in their policy of insurance, including winterizing the property. Plaintiff incurred substantial costs in addressing these and other issues. Such included, *inter alia*: (a) Carlin Simpson and Associates; (b) Substrata Technologies, Inc.; (c) Cornerstone Structural Engineering Consultants; (d) A.A. Frankenfield Contracting Co.; (e) Ground Penetrating Radar Systems, Inc.; (f) Enviroprobe Service Incorporated; (g) Uretek; (h) JCP&L; and (i) Frey Engineering, LLC.

21. Further, Plaintiffs incurred expenses regarding their having to vacate their home and seek temporary motel accommodations and then move the family into a rental property. Plaintiffs continue to pay the mortgage, taxes, and general maintenance on the 3 Pohat Court home in addition to all costs associated with their rented dwelling.

22. Plaintiffs did, in a timely fashion, provide Defendant with all documentation and invoices reflective of the afore-noted businesses and vendors. Plaintiffs both submitted to an Examination Under Oath. Plaintiffs did follow all appropriate procedures to enable them to qualify for payment/reimbursement pursuant to the "Anticipated Living Expenses" (ALE) coverage of their policy of insurance. The costs set forth herein do not purport to represent all out-of-pocket expenses incurred by Plaintiffs.

23. In January 2016 Defendants sent two engineers to the Pohat Court property to examine the premises and "determine' the cause of the damage to the dwelling. Their initial engineer, Peter Svoboda of Atlantic Professional Services, Inc., had visited the home on a prior occasion together with representatives of Plaintiffs.

24. By correspondence dated March 31, 2016, Defendant, through their representative, Fritz Lander, General Adjuster, denied coverage for the damage which occurred to Plaintiffs' dwelling basing same on the fact that it was not caused by a "sinkhole" collapse, but rather, the cracking that occurred in the basement slab and basement walls were the result of ineffective construction methods and materials at the time the home was built, combined with lateral movement of the walls due to soil pressure and hydraulic pressure caused by subsurface water. Accordingly, in the absence of a sinkhole causation, then the "earth movement" exclusion would apply. Further citation to the Policy was submitted in support of the denial.

25. Defendant, in its denial letter of March 31, 2016, did state that their previous acceptance and payment of the waste line and sewer backup claim was in error and that the claim should have been denied on the basis of the "water damage" exclusion. They also reserved their rights to go after Plaintiffs for the payment of those monies.

26. Defendant has breached its contractual duty to Plaintiffs in failing to provide coverage for damages incurred to 3 Pohat Court as a result of a "covered" loss, to wit, damages caused by a "sinkhole collapse."

27. As a result of said breach, Plaintiffs have suffered significant monetary loss in dealing with the damages to their home, efforts to remedy same, having to secure alternative housing while continuing to pay the mortgage and taxes, as well as being denied the payment of monies from Defendant pursuant to the amount of coverage provided in the contract of insurance between the parties. Such did further cause emotional destress to Plaintiffs as well as their children and continues to do so.

WHEREFORE, Plaintiffs demand from the Defendant the following:

(a) Compensatory damages;

(b) Attorneys' fees and costs;

(c) An Order compelling Defendant to provide coverage under the terms and conditions of the policy of insurance and payment referenced therein; and

(d) Such other and further relief as the Court may deem appropriate.

## SECOND COUNT

28. Plaintiffs repeat the allegations set forth in the First Count as if set forth at length herein.

29. Defendant's conduct did constitute a breach of good-faith and fair dealing.

WHEREFORE, Plaintiffs demand the following:

(a) Compensatory damages;

(b) Attorneys' fees and costs;

(c) An Order compelling Defendant to provide coverage under the terms and conditions of the policy of insurance; and

(d) Such other and further relief as the Court may deem appropriate.

## THIRD COUNT

30.  Plaintiffs repeat the allegations set forth in the First and Second Counts as if set forth at length herein.

31.  Defendant's conduct, in threatening to seek reimbursement from Plaintiffs for the monies which Defendant has already paid pursuant to a covered loss, is evidence of bad-faith and is further intended to intimidate the Plaintiffs into not exercising their rights to demand that Defendant's adhere to the terms and conditions of their contract of insurance and to pay their claim as set forth herein.

WHEREFORE, Plaintiffs demand the following:

(a) Compensatory damages;

(b) Attorneys' fees and costs;

(c) Punitive damages;

(d) An Order compelling Defendant to provide coverage under the terms and conditions of the policy of insurance; and

(e) Such other and further relief as the Court may deem appropriate.

## JURY DEMAND

Plaintiffs demand a trial by jury on all issues of the within Complaint.

## RULE 4:5-1 CERTIFICATION

I hereby certify that the matter in controversy is not the subject of any other pending and/or contemplated action or pending and/or contemplated proceeding. I know of no other parties who should be joined in this action at this time.

## DESIGNATION OF TRIAL COUNSEL

Plaintiffs hereby designate Robert B. Woodruff as trial counsel in the above matter.

SCHILLER & PITTENGER, P.C.
Attorneys for Plaintiffs

Dated: April 25, 2016

BY: _____
ROBERT B. WOODRUFF

9

**Appendix XII-B1**



# CIVIL CASE INFORMATION STATEMENT
## (CIS)

Use for initial Law Division
Civil Part pleadings (not motions) under *Rule* 4:5-1
**Pleading will be rejected for filing, under *Rule* 1:5-6(c),
if information above the black bar is not completed
or attorney's signature is not affixed**

FOR USE BY CLERK'S OFFICE ONLY
PAYMENT TYPE: ☐ CK ☐ CG ☐ CA
CHG/CK NO.
AMOUNT:
OVERPAYMENT:
BATCH NUMBER:

| ATTORNEY / PRO SE NAME | TELEPHONE NUMBER | COUNTY OF VENUE |
|---|---|---|
| Robert B. Woodruff | (908) 490-0444 | Warren |

| FIRM NAME (if applicable) | DOCKET NUMBER (when available) |
|---|---|
| Schiller & Pittenger, P.C. | L-132-16 |

| OFFICE ADDRESS | DOCUMENT TYPE |
|---|---|
| 1771 Front Street<br>Scotch Plains, NJ 07076 | Complaint |
| | JURY DEMAND  ■ YES  ☐ NO |

| NAME OF PARTY (e.g., John Doe, Plaintiff) | CAPTION |
|---|---|
| Natalie Orban and David Orban | Natalie Orban and David Orban v. Liberty Mutual Fire Insurance Company |

| CASE TYPE NUMBER<br>(See reverse side for listing)<br>599 - Insurance | HURRICANE SANDY RELATED?<br>☐ YES  ■ NO | IS THIS A PROFESSIONAL MALPRACTICE CASE?  ☐ YES  ■ NO<br>IF YOU HAVE CHECKED "YES," SEE *N.J.S.A.* 2A:53 A -27 AND APPLICABLE CASE LAW REGARDING YOUR OBLIGATION TO FILE AN AFFIDAVIT OF MERIT. |
|---|---|---|
| RELATED CASES PENDING?<br>☐ YES  ■ NO | IF YES, LIST DOCKET NUMBERS | |
| DO YOU ANTICIPATE ADDING ANY PARTIES<br>(arising out of same transaction or occurrence)?<br>☐ YES  ■ NO | NAME OF DEFENDANT'S PRIMARY INSURANCE COMPANY (if known)<br>☐ NONE<br>■ UNKNOWN | |

**THE INFORMATION PROVIDED ON THIS FORM CANNOT BE INTRODUCED INTO EVIDENCE.**

CASE CHARACTERISTICS FOR PURPOSES OF DETERMINING IF CASE IS APPROPRIATE FOR MEDIATION

| DO PARTIES HAVE A CURRENT, PAST OR RECURRENT RELATIONSHIP?<br>☐ YES  ■ NO | IF YES, IS THAT RELATIONSHIP:<br>☐ EMPLOYER/EMPLOYEE  ☐ FRIEND/NEIGHBOR  ☐ OTHER (explain)<br>☐ FAMILIAL  ☐ BUSINESS |
|---|---|
| DOES THE STATUTE GOVERNING THIS CASE PROVIDE FOR PAYMENT OF FEES BY THE LOSING PARTY? | ☐ YES  ■ NO |

USE THIS SPACE TO ALERT THE COURT TO ANY SPECIAL CASE CHARACTERISTICS THAT MAY WARRANT INDIVIDUAL MANAGEMENT OR ACCELERATED DISPOSITION

| DO YOU OR YOUR CLIENT NEED ANY DISABILITY ACCOMMODATIONS?<br>☐ YES  ■ NO | IF YES, PLEASE IDENTIFY THE REQUESTED ACCOMMODATION |
|---|---|
| WILL AN INTERPRETER BE NEEDED?<br>☐ YES  ■ NO | IF YES, FOR WHAT LANGUAGE? |

I certify that confidential personal identifiers have been redacted from documents now submitted to the court, and will be redacted from all documents submitted in the future in accordance with *Rule* 1:38-7(b).

ATTORNEY SIGNATURE: *[signature]*

Effective 05-04-2015, CN 10517-English                                                                  page 1 of 2

**Side 2**

# CIVIL CASE INFORMATION STATEMENT
## (CIS)
Use for initial pleadings (not motions) under *Rule* 4:5-1

**CASE TYPES** (Choose one and enter number of case type in appropriate space on the reverse side.)

**Track I - 150 days' discovery**
- 151  NAME CHANGE
- 175  FORFEITURE
- 302  TENANCY
- 399  REAL PROPERTY (other than Tenancy, Contract, Condemnation, Complex Commercial or Construction)
- 502  BOOK ACCOUNT (debt collection matters only)
- 505  OTHER INSURANCE CLAIM (including declaratory judgment actions)
- 506  PIP COVERAGE
- 510  UM or UIM CLAIM (coverage issues only)
- 511  ACTION ON NEGOTIABLE INSTRUMENT
- 512  LEMON LAW
- 801  SUMMARY ACTION
- 802  OPEN PUBLIC RECORDS ACT (summary action)
- 999  OTHER (briefly describe nature of action)

**Track II - 300 days' discovery**
- 305  CONSTRUCTION
- 509  EMPLOYMENT (other than CEPA or LAD)
- 599  CONTRACT/COMMERCIAL TRANSACTION
- 603N AUTO NEGLIGENCE – PERSONAL INJURY (non-verbal threshold)
- 603Y AUTO NEGLIGENCE – PERSONAL INJURY (verbal threshold)
- 605  PERSONAL INJURY
- 610  AUTO NEGLIGENCE – PROPERTY DAMAGE
- 621  UM or UIM CLAIM (includes bodily injury)
- 699  TORT – OTHER

**Track III - 450 days' discovery**
- 005  CIVIL RIGHTS
- 301  CONDEMNATION
- 602  ASSAULT AND BATTERY
- 604  MEDICAL MALPRACTICE
- 606  PRODUCT LIABILITY
- 607  PROFESSIONAL MALPRACTICE
- 608  TOXIC TORT
- 609  DEFAMATION
- 616  WHISTLEBLOWER / CONSCIENTIOUS EMPLOYEE PROTECTION ACT (CEPA) CASES
- 617  INVERSE CONDEMNATION
- 618  LAW AGAINST DISCRIMINATION (LAD) CASES

**Track IV - Active Case Management by Individual Judge / 450 days' discovery**
- 156  ENVIRONMENTAL/ENVIRONMENTAL COVERAGE LITIGATION
- 303  MT. LAUREL
- 508  COMPLEX COMMERCIAL
- 513  COMPLEX CONSTRUCTION
- 514  INSURANCE FRAUD
- 620  FALSE CLAIMS ACT
- 701  ACTIONS IN LIEU OF PREROGATIVE WRITS

**Multicounty Litigation (Track IV)**
- 271  ACCUTANE/ISOTRETINOIN
- 274  RISPERDAL/SEROQUEL/ZYPREXA
- 278  ZOMETA/AREDIA
- 279  GADOLINIUM
- 281  BRISTOL-MYERS SQUIBB ENVIRONMENTAL
- 282  FOSAMAX
- 285  STRYKER TRIDENT HIP IMPLANTS
- 286  LEVAQUIN
- 287  YAZ/YASMIN/OCELLA
- 288  PRUDENTIAL TORT LITIGATION
- 289  REGLAN
- 290  POMPTON LAKES ENVIRONMENTAL LITIGATION
- 291  PELVIC MESH/GYNECARE
- 292  PELVIC MESH/BARD
- 293  DEPUY ASR HIP IMPLANT LITIGATION
- 295  ALLODERM REGENERATIVE TISSUE MATRIX
- 296  STRYKER REJUVENATE/ABG II MODULAR HIP STEM COMPONENTS
- 297  MIRENA CONTRACEPTIVE DEVICE
- 601  ASBESTOS
- 623  PROPECIA

If you believe this case requires a track other than that provided above, please indicate the reason on Side 1, in the space under "Case Characteristics.

**Please check off each applicable category**   ☐ **Putative Class Action**   ☐ **Title 59**